## IN THE UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF ILLINOIS

### PEORIA DIVISION

| | | |
|---|---|---|
| CHRISTOPHER W. BAHAN, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:18-CV-01414-JES-JEH |
| | ) | |
| vs. | ) | |
| | ) | |
| CNH INDUSTRIAL AMERICA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT OF DEFENDANT

NOW COMES the Plaintiff, CHRISTOPHER W. BAHAN, ("Bahan") by his attorneys Costigan & Wollrab, P. C. and for his Response in Opposition to the Motion for Summary Judgment filed by Defendant, CNH Industrial, ("CNH) filed pursuant to F.R.C.P. 56 and Local Rule 7.1 (D) hereby states the following:

## I.      INTRODUCTION

Bahan worked as a painter for CNH. Bahan started working for CNH in March of 1987; and Bahan worked for CNH until his employment was terminated by CNH on September 23, 2016. Following the termination of his employment by CNH, Bahan filed a Complaint against CNH. Count I of Bahan's Complaint alleged that CNH had failed to accommodate Bahan's requests for reasonable accommodations in violation of the provisions of the *Americans with Disabilities Act Amendments Act* ("ADAAA"). Count II of Bahan's Complaint alleged that in addition to refusing to accommodate his requests for accommodation, CNH retaliated against Bahan due to his exercise of his rights under the ADAAA. Bahan asserts that CNH terminated Bahan's employment in retaliation for his requests for accommodation.

CNH asserts that Bahan's employment with CNH was terminated due to Bahan's accumulation of seven (7) attendance occurrences, which led to CNH's decision to terminate Bahan's employment. Bahan asserts that he did not have seven (7) attendance occurrences as a result of Bahan calling in sick on September 22, 2016. Bahan asserts that in accordance with the Attendance Policy of CNH, his absence for illness on September 22, 2016 was due to an "occupational illness or injury"; and therefore his absence on September 22, 2016 gave rise to an exception under the Attendance Policy. CNH was aware that Bahan had sustained an occupational illness due to his exposure to powder paint dust; and Bahan's treating pulmonologist had advised CNH in writing on September 2, 2016 that as an accommodation, Bahan should be allowed to work outside of the paint box E-Room; and should also be allowed consideration for his illness and his absence from work as an accommodation. CNH's Human Resource Manager, Michelle Agnew, was aware of Bahan's occupational illness as was Bahan's supervisor, Darrell Ellis. The CNH company nurse, Dan Hafey, was also aware of Bahan's occupational illness; and in fact, CNH had retained the services of Dr. Hauter at IWIRC to evaluate Bahan's respiratory status; and Dr. Hauter had opined that based on Dr. Hauter's evaluation, Bahan should not work in areas of CNH requiring him to wear a respirator.

Bahan further asserts that CNH violated the provisions of its Attendance Policy when it terminated Bahan for having seven attendance occurrences and failed to adhere to the terms of its own Attendance Policy. Bahan asserts that CNH's proffered reason for terminating his employment; namely, that he had incurred seven attendance occurrences under the CNH Attendance Policy was "pretext" for discrimination and retaliation in violation of the provisions of ADAAA. Bahan asserts that there are genuine issues of material fact as to the truthfulness of CNH's proffered reason for terminating Bahan; particularly when the application of the

Attendance Policy by Michelle Agnew violated the provisions of the Attendance Policy. In addition, Bahan asserts that there are genuine issues of material fact as to the number of attendance occurrences Bahan had on September 22, 2016, when Bahan notified CNH that he was sick on September 22, 2016 and would not be in to work. The motive and intent of CNH in terminating Bahan after Bahan's request for accommodation on September 6, 2016; and his follow up request for accommodation on September 12, 2016 is in such close proximity of time to give rise to a reasonable inference of "pretext". In addition, there are genuine issues of material fact as to the motives of the Human Resource personnel and management personnel of CNH such that a factfinder must be allowed to consider the reasons proffered by CNH for its termination of Bahan's employment, in particular, given that he worked for CNH for almost 30 years prior to his termination.

On the basis of the foregoing and the evidence presented in Opposition to CNH's Motion for Summary Judgment, Bahan respectfully requests that this Court deny CNH's Motion for Summary Judgment and further prays for such other and further relief as is deemed equitable and proper.

## II.    RESPONSE TO DEFENDANT'S UNDISPUTED ASSERTED MATERIAL FACTS

(1)    **Undisputed Material Facts**

The following paragraphs in Section II of CNH's Motion for Summary Judgment contain undisputed material facts:  3, 4, 5, 6, 7, 9, 10, 11, 12, 14, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31, 32, 33, 34, 35, 42, 43, and 47.

(2)    **Disputed Material Facts**

The following paragraphs in Section II of CNH's Motion for Summary Judgment are disputed material facts:

1.      CNH prohibits discrimination against employees and applicants with respect to race, color, religion, age, sex, national origin, disability, veteran status, sexual orientation, gender identity, genetic information, and any other status protected by federal, state, provincial or local law. (Ex. 1, Declaration of Michelle Agnew ("Agnew Dec.", ¶ 5, Ex. A to Agnew Dec.) This statement is not a statement of fact; and the declarant, Michelle Agnew is without foundation to make any statement of fact asserting that CNH prohibits certain discriminatory conduct. The declarant is only able to state that CNH has a particular policy prohibiting discrimination; but it is one of the ultimate issues for consideration of this Court whether CNH has actually committed discrimination; so a statement of fact that CNH "prohibits discrimination" is disputed on the basis that the statement is a legal conclusion and not a fact.

2.      CNH also prohibits retaliation against persons who have engaged in protected activity. (*Id.*) This statement is not a statement of fact; and the declarant, Michelle Agnew is without foundation to make any statement of fact asserting that CNH prohibits retaliation. The declarant is only able to state that CNH has a particular policy prohibiting retaliation; but it is one of the ultimate issues for consideration of this Court whether CNH has actually retaliated; so a statement of fact that CNH "prohibits retaliation" is disputed on the basis that the statement is a legal conclusion and not a fact.

8.      CNH has an Attendance Policy under which employees receive occurrences if they are late, leave early, are absent, or fail to call their supervisor to report an absence at least 30 minutes prior to the start of their shift. (Ex. 3, Agnew Dep. 39:22-40:22, Ex. 1 to Agnew Dep.) The fact that CNH has an Attendance Policy is undisputed. However, the remainder of the facts set forth in this paragraph 8 are disputed as there are exceptions to the Attendance Policy set

4

forth in paragraph 5 of the Attendance Policy; and therefore BAHAN disputes the additional

facts set forth in this paragraph 8; and asserts that the Attendance Policy speaks for itself and

provides as indicated in Ex. 1 to Agnew Dep. There is no dispute as to the Attendance Policy in

effect on the date of BAHAN's termination. See Additional Material Fact paragraph 23 below.

13.     In the 12-month period before Bahan's termination, Bahan accrued the following

attendance occurrences:

| Date | Occurrence |
| --- | --- |
| October 8, 2015 | First |
| October 13, 2015 | Second |
| November 18, 2015 | Third |
| November 19, 2015 | Fourth—Verbal Counseling Issued |
| December 17, 2015 | Fifth—Written Warning |
| May 17, 2016 | Sixth—3 Day Suspension Issued |

(Ex. 2, Bahan Dep. 75:7-19, 76:22-77:24, 78:19-79:22, Exs. 4, 5, 6 to Bahan Dep.; Ex. 1, Agnew
Dec. ¶ 7, Ex. B to Agnew Dec.)

The facts set forth in paragraph 13 are disputed. In Ex. B to the Declaration of Michelle Agnew,

Michelle Agnew indicates that Bahan's Attendance Points as of May 17, 2016 were as indicated

below:

| Event Date | | Expires |
| --- | --- | --- |
| 4/27/2015 | 1 point | 7/13/2016 |
| 10/8/2015 | 1 point | 10/8/2016 |
| 10/13/2015 | 1 point | 10/13/2016 |
| 11/18/2015 | 1 point | 11/18/2016 |
| 11/19/2015 Verbal Warning Issued | | |
| 12/15/2015 | 1 point | 12/15/2016 |

5

12/17/2015     Written Warning Issued

5/16/2016      1 point -3 Day Suspension     5/16/2017

The statement set forth in paragraph 13 regarding "November 19, 2017 Fourth –Verbal

Counseling Issued" is disputed. As noted in the Ex. B to Declaration of Michelle Agnew, a

Verbal Warning was issued on November 19, 2015 for the attendance violation on November 18,

2015. The attendance occurrences in the 12-month period before BAHAN's termination on

September 23, 2016 were as follows:

| Date | Occurrence |
| --- | --- |
| October 8, 2015 | First |
| October 13, 2015 | Second |
| November 18, 2015 | Third |
| December 17, 2015 | Fourth—Written Warning |
| May 17, 2016 | Fifth—3 Day Suspension Issued |

15.     After receiving the 3-day suspension, Bahan also re-signed receipt of the

Attendance Policy and signed that he understood that any one additional unexcused attendance

for the following year would result in his termination from CNH. (Ex. 2, Bahan Dep. 79:23-

80:25, Ex. 6 to Bahan Dep.)

This fact is disputed. Based on the Declaration of Michelle Agnew, and in particular Ex. "B" to

the Declaration, Bahan had only incurred his Fifth attendance occurrence on May 17, 2016. The

first occurrence of April 27, 2015 should have expired one year later on April 27, 2016 as

indicated for each of the other occurrences noted on Ex. "B" to the Declaration of Michelle

Agnew; and that attendance occurrence on April 27, 2015 had already rolled off and was not

counted in the 12-month period before BAHAN's termination on September 23, 2016.

Additionally, there was no attendance occurrence on November 19, 2015 as incorrectly stated in paragraph 13 of Section II of CNH's Motion for Summary Judgment.

44.     Bahan did not state that this absence was related to his health condition that CNH was accommodating. (Ex. 2, Bahan Dep. 109:10-18, 110:19-111:20, Ex. 12 to Bahan Dep.) Bahan admits the content set forth in the text messages set forth in Ex. 12 to Bahan Dep. However, Bahan disputes the asserted fact that he did not state that the absence on September 22, 2016 was related to his health condition that CNH was accommodating. (Bahan Dep. p. 135, line 1 to line 12 and p. 136, line 16 to line 25 and p. 137, line 1 to line 8 and Ex. 19 to Bahan Dep.)

45.     This incident was Bahan's seventh attendance occurrence. (Ex. 1, Declaration of Michelle Agnew, Ex. "B")
This fact is disputed. Ex. 1, which is the Declaration of Michelle Agnew reveals in Ex. "B" that the occurrence on May 16, 2016 was actually BAHAN's fifth occurrence; as there was no attendance occurrence on November 19, 2015 as previously asserted by CNH.

46.     Agnew terminated Bahan's employment on September 23, 2016, due to his poor attendance in accordance with CNH's attendance policy. (Ex. 1, Agnew Dec. ¶ 10; Ex. 2, Bahan Dep. 101:13-102:9, Ex. 11 to Bahan Dep.)
This fact is disputed. Agnew did not terminate Bahan's employment "in accordance with CNH's attendance policy" as it is asserted by BAHAN that one of the exceptions set forth in the Attendance Policy applied to his absence on September 22, 2016. The CNH Attendance Policy did provide exceptions for "Occupational Illness or Injury" at paragraph 5 of Section 8; and Agnew was aware of Bahan's occupational injury in July of 2016; and Agnew and CNH's company nurse had access to the medical file on Bahan indicating Bahan's respiration issues. (Ex. 2, Bahan Dep., Agnew Dep. p. 34, line 7 to line 25 and p. 35, line 1 to line 17 and Ex. 2 to Agnew Dep)

In addition, the occurrence on September 22, 2016 was actually only Bahan's sixth occurrence not his seventh occurrence –documented discharge for excessive absenteeism. (Ex. 2, Bahan Dep.)

50.     In his panel review request, Bahan staed for the first time that his final absence from work may have been related to his health condition. (Ex. 2, Bahan Dep. 112:4-17, Ex. 13 to Bahan Dep.)

This fact is disputed. Bahan's treating physician requested accommodation for Bahan regarding time away from work due to his condition. (Ex. 9, Bahan Dep., a copy of which is attached to this Response)

51.     Prior to submitting the panel review request, Bahan never informed Agnew that the absence leading to his termination may have been related to the health condition that CNH was accommodating, and Bahan never requested an accommodation for time off from work. (Ex. 1, Agnew Dec. ¶ 12)

This fact is disputed. Bahan's treating physician requested accommodation for Bahan regarding time away from work due to his condition. (Ex. 9, Bahan Dep., a copy of which is attached to this Response) Additionally, Bahan gave Dr. McVay's letter to Darrell Ellis; and the company nurse asked to discuss the letter. (Ex. 19, Bahan Dep., at p. 7, a copy of which is attached to this Response)

60.     In his deposition, Bahan admitted that the only request for accommodation he made was to be moved out of the E-Room:

Q:     Was there any other request that you had made other than to be moved out of the E-Room in 2016?

A:     No, I believe that was it.

This fact is disputed. Bahan's accommodation request to be moved out of the E-Room was indicated in the letter from Dr. McVay, dated September 2, 2016. In addition, the letter from Dr. McVay also requested that CNH take Bahan's illness into "…consideration when reviewing his time away." (Ex. 9, Bahan Dep.)

67.     None of the paperwork completed by Bahan's physician indicated that time off from work was needed as an accommodation for Bahan's health condition. (Ex. 1, Agnew Dec. ¶ 18, Ex. D to Agnew Dec.)

This fact is disputed. Bahan's accommodation request to be moved out of the E-Room was indicated in the letter from Dr. McVay, dated September 2, 2016. In addition, the letter from Dr. McVay also requested that CNH take Bahan's illness into "…consideration when reviewing his time away." (Ex. 9, Bahan Dep.) Additionally, Darrell Ellis and the company nurse had received copies of Dr. McVay's letter of September 2, 2016; and the company nurse had reached out to discuss the matter. (Ex. 9, Bahan Dep.)

68. Bahan testified his physician "never provided anything to [him] that said [he] needed to take time off from work." (Ex. 2, Bahan Dep. 192:3-7)

This fact is disputed.  Bahan's accommodation request to be moved out of the E-Room was indicated in the letter from Dr. McVay, dated September 2, 2016. In addition, the letter from Dr. McVay also requested that CNH take Bahan's illness into "…consideration when reviewing his time away." (Ex. 9, Bahan Dep.) Additionally, Darrell Ellis and the company nurse had received copies of Dr. McVay's letter of September 2, 2016; and the company nurse had reached out to discuss the matter. (Ex. 9, Bahan Dep.) Also, counsel's question to Bahan was referring to the time when Bahan was moved to the E-Room, which would have been after CNH received Dr.

McVay's letter of September 2, 2016; which did state that Bahan's time away from work should be considered in relation to his illness. (Ex. 9, Bahan Dep.)

70.     Accordingly, the termination decision remained final. (Ex. 2, Bahan Dep. 131:1-15, Ex. 18 to Bahan Dep.)

The fact that the termination decision was final is not disputed. However, the assertion by CNH that the termination decision was final due to the reasons set forth in the letter penned by Agnew on February 6, 2017 is disputed. The letter penned by Agnew on February 6, 2017 is a self-serving statement.

(3)    <b><u>Disputed Immaterial Facts</u></b>

53.     However, as a result of receiving this information, CNH engaged in the interactive process to determine what, if any, additional accommodations Bahan may have needed to perform the essential functions of his position, including any occasional time off from work. (Ex. 1, Agnew Dec. ¶ 13)

This immaterial fact is disputed. CNH had the information for the accommodation requested for occasional time off from work when CNH received the letter of September 2, 2016 written by Dr. McVay and given to Darrell Ellis and the company nurse. (Ex. 9, Dep. of Bahan)

56. Bahan stated he did not need time off from work. (Ex. 1, Agnew Dec. ¶ 15)

This immaterial fact is disputed. CNH had the information for the accommodation requested for occasional time off from work when CNH received the letter of September 2, 2016 written by Dr. McVay and given to Darrell Ellis and the company nurse. (Ex. 9, Dep. of Bahan)

69.     On February 6, 2017, Agnew again responded to Bahan by letter. The letter speaks for itself. (Ex. 2, Bahan Dep. 131:1-15, Ex. 18 to Bahan Dep.)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation

10

when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

    (4)    **Undisputed Immaterial Facts**

The following paragraphs in Section II of CNH's Motion for Summary Judgment are undisputed immaterial facts:

28.    Bahan received the same training that a new hire would receive for the position. (Ex. 3, Agnew Dep. 28:8-19)

36.    On September 15, 2016, Bahan received training on scanning and loading the line. This fact is not material to the issues for consideration by this Court on the Motion for Summary Judgment. Michelle Agnew testified that the reason Bahan's employment was terminated was because Bahan had his seventh occurrence –excessive absenteeism. (Deposition Michelle Agnew, p. 42, line 1 to line 3) CNH has never asserted that Bahan's lack of training or his performance in the position of Painter 7 was inferior in any respect; and therefore, the training he received is immaterial.

37.    Bahann's supervisor, Darrell Ellis, told Bahan that his scanning was getting better and he just needed to work on his speed.

This fact is not material to the issues for consideration by this Court on the Motion for Summary Judgment. Michelle Agnew testified that the reason Bahan's employment was terminated was because Bahan had his seventh occurrence –excessive absenteeism. (Deposition Michelle Agnew, p. 42, line 1 to line 3) CNH has never asserted that Bahan's performance of his job duties in the position of Painter 7 was inferior in any respect; and therefore, Bahan's supervisor's statements are immaterial.

38.    Bahan responded that Ellis was "getting all [Bahan was] giving" and "if it is not good enough then fire [him]."

This fact is not material to the issues for consideration by this Court on the Motion for Summary

Judgment. Michelle Agnew testified that the reason Bahan's employment was terminated was because Bahan had his seventh occurrence –excessive absenteeism. (Deposition Michelle Agnew, p. 42, line 1 to line 3) CNH has never asserted that Bahan's statement to Ellis was the reason for Bahan's termination; and therefore, the conversation with his supervisor is immaterial.

      39.     Bahan then walked away from Ellis.

This fact is not material to the issues for consideration by this Court on the Motion for Summary Judgment. Michelle Agnew testified that the reason Bahan's employment was terminated was because Bahan had his seventh occurrence –excessive absenteeism. (Deposition Michelle Agnew, p. 42, line 1 to line 3) CNH has never asserted that Bahan walking away from Ellis was the reason for Bahan's termination; and therefore, this fact is immaterial.

      40.     Bahan received a documented verbal warning for this insubordinate conduct.

This fact is not material to the issues for consideration by this Court on the Motion for Summary Judgment. Michelle Agnew testified that the reason Bahan's employment was terminated was because Bahan had his seventh occurrence –excessive absenteeism. (Deposition Michelle Agnew, p. 42, line 1 to line 3) CNH has never asserted that Bahan's verbal warning relating to his interaction with Ellis was the reason for his termination; and therefore, this fact is immaterial.

      41.     Ellis wrote on the warning, "I have been working with Chris and putting people with Chris to help him succeed with every job I place him."

This fact is not material to the issues for consideration by this Court on the Motion for Summary Judgment. Michelle Agnew testified that the reason Bahan's employment was terminated was because Bahan had his seventh occurrence –excessive absenteeism. (Deposition Michelle Agnew, p. 42, line 1 to line 3) CNH has never asserted that Bahan's performance of his job duties as a Painter 7 was the reason for his termination; and therefore, any assistance Ellis gave to Bahan is immaterial.

      48.     After an employee is terminated from CHN's Goodfield Plant, the employee may

challenge the termination through a review of the decision by a panel of fellow employees.

(Ex. 2, Bahan Dep. 112:4-17, Ex. 13 to Bahan Dep.)

This fact is not material. Michelle Agnew testified that the panel peer review was not mandatory.

(Agnew Dep. p. 58, line 1 to line 3)

      49.     Bahan initially challenged his termination through this panel review process. (Ex.

2, Bahan Dep. 112:4-17, Ex. 13 to Bahan Dep.)

This fact is not material. Michelle Agnew testified that the panel peer review was not mandatory.

(Agnew Dep. p. 58, line 1 to line 3)

      52.     Bahan later withdrew his panel review request. (Ex. 2, Bahan Dep. 114:22-25)

This fact is not material. Michelle Agnew testified that the panel peer review was not mandatory.

(Agnew Dep. p. 58, line 1 to line 3)

      54.     Bahan was not eligible for Family and Medical Leave Act ("FMLA") leave at the

time of his termination because he had not worked the required amount of hours. (Ex. 1, Agnew

Dec. ¶14)

This fact is immaterial. Bahan is not asserting that he was entitled to FMLA leave.

      55.     As part of the interactive process, Agnew met with Bahan on October 7, 2016, and

specifically asked him whether he needed a leave of absence or time off due to his health

condition. (Ex. 1, Agnew Dec. ¶15).

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September

23, 2016. (Ex. 11, Bahan Dep.)

      57.     At the October 7, 2016, meeting, Agnew gave Bahan paperwork for him and his

physician to complete. (Ex. 1, Agnew Dec. Dec. ¶15)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September

23, 2016. (Ex. 11, Bahan Dep.)

58.　　On October 11, 2016, Bahan returned the paperwork and requested the following accommodation: "To avoid powder dust." (Ex. 2, Bahan Dep. 121:7-21, Ex. 15 to Bahan Dep. at CNH 000038)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

59.　　In that form, Bahan also stated that CNH accommodated him in the past by reassigning him, which was an effective accommodation and allowed him to perform his job. (Ex. 2, Bahan Dep. 121:7-21, 122:25-123:11, Ex. 15 to Bahan Dep. at CNH_000038)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

61.　　Bahan provided CNH with an executed ADA Accomodatoin Medical Release/Authorization and the fax number for his treating physician. (Ex. 2, Bahan Dep., 121:7-21, 122:25-123:11, Ex. 15 at CNH_000038).

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

62.　　On October 13, 2016, CNH faxed the ADA paperwork to Bahan's treating physician. (Ex. 1, Agnew Dec. ¶17, Ex. C to Agnew Dec.)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

63.     Bahan's physician did not respond. (Ex. 1, Agnew Dec. ¶18; Ex. 2, Bahan Dep. 126:17-20, Ex. 17 to Bahan Dep.)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

64.     On January 9, 2017, Agnew followed up with Bahan by letter. The contents of the letter speaks for itself. (Ex. 2, Bahan Dep. 126:17-20, Ex. 17 to Bahan Dep.; Ex. 3, Agnew Dep. 38:16-39:2)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

65.     Agnew gave Bahan until January 25, 2017, to provide any additional information for consideration. (Ex. 2, Bahan Dep. 126: 17-20, Ex. 17 to Bahan Dep.)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September 23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the company nurse. (Ex. 9, Bahan Dep.)

66.     Bahan's physician finally returned the paperwork to CNH on January 30, 2017.

(Ex. 1, Agnew Dec. ¶ 18, Ex. D to Agnew Dec.)

This fact is immaterial. This was after CNH made the decision to terminate Bahan on September

23, 2016. (Ex. 11, Bahan Dep.) Additionally, Bahan had already requested the accommodation

when he presented the letter of September 2, 2016 from Dr. McVay to Darrell Ellis and the

company nurse. (Ex. 9, Bahan Dep.)

(5)     **Additional Material Facts**

Bahan asserts that the following Additional Material Facts are relevant to the

consideration of the issues raised in opposition to the Motion for Summary Judgment filed by

CNH:

1.      It was the policy of CNH that if an employee had a work injury then the

"…employee should notify his or her supervisor, as well as contact the nurse if needed,

depending on the circumstances." (Agnew Dep., p. 10, line 11 to line 20)

2.      Michelle Agnew became aware in the summer of 2016 that BAHAN was

indicating that he had sustained a work-related exposure as a consequence of ingesting paint

dust. (Agnew Dep. p. 14, line 11 to line 18)

3.      Michelle Agnew became aware of BAHAN's claim of occupational injury

"…during a routine assessment process that our nurse and safety team utilities." She explained

that BAHAN had gone to IWRIC at the request of CNH; and BAHAN had a "non-positive

assessment" by IWIRC, which meant that BAHAN was not allowed to use a respirator while

painting. (Agnew Dep., p. 14, line 20-25 and p. 15, line 1 to line 23)

4.      In the summer of 2016, CNH used IWIRC, an occupational organization, for

evaluation and assessment of work-related exposures. (Agnew Dep. p. 15, line 15-25 and p. 16,

line 1 to line 8)

5.      Michelle Agnew was advised by the company nurse that BAHAN was asked by CNH to go to IWIRC for the occupational assessment. Michelle Agnew was communicating with the company nurse regarding the assessment that was done on BAHAN by IWIRC. (Agnew Dep. p. 18, line 6-19)

6.      The company nurse came to Michelle Agnew in June of 2016 regarding the company nurse's concern that BAHAN would not be able to do his job based on the assessment by IWIRC that BAHAN could not use a respirator. (Agnew Dep. p.18, line 20 to 25 and p. 19, line 1 to line 11)

7.      Several weeks after the CNH plant shutdown, BAHAN provided Michelle Agnew with a doctor's note stating that BAHAN had restrictions due to his exposure in the workplace. (Agnew Dep. p.19, line 23 to 25 and p. 20, line 1 to line 16)

8.      CNH did have specific rules as to which employees were required to go for occupational assessments at IWIRC in the summer of 2016; and based on those rules, BAHAN was required to go for occupational assessment by IWIRCS in the summer of 2016. (Agnew Dep. p. 21, line 20-24 and p. 22, line 6 to line 11)

9.      The company nurse came to Michelle Agnew after the company nurse received the assessment from IWIRC restricting BAHAN from using a respirator in his position. (Agnew Dep. p.20, line 17-25 and p. 21, line 1 to line 7)

10.      As a consequence of the occupational assessment conducted by IWIRC, BAHAN was restricted from utilizing a respirator at CNH. (Agnew Dep. p. 22, line 12 to line 15)

11.      It was a requirement of CNH that if BAHAN was going to work in the powder coat painting process as a painter, BAHAN was required to utilize a respirator. (Agnew Dep. p. 22, line 16 to line 20)

17

12.     Michelle Agnew, the company nurse, Dan, BAHAN's supervisor, Darrell Ellis, and the business area manager were all involved in the discussion relating to modifying BAHAN's position to allow him to work without a respirator. (Agnew Dep. p. 23, line 1-22 and p. 24, line 3 to line 7)

13.     BAHAN was a tenured employee who had worked for CNH since March of 1987 Michelle Agnew stated that CNH valued "tenure at our organization". (Agnew Dep. p. 24, line 18 to 19, BAHAN Dep. p.34, line 25 and p.35 line 1)

14.     CNH allowed BAHAN to work outside the E-Room without a respirator; but BAHAN was still working in the paint department. (Agnew Dep. p. 24, line 19 to 23)

15.     The E-Room is a closed in box designed to contain the powder coating paint. (Agnew Dep. p. 25, line 1 to line 8)

16.     Darrell Ellis was BAHAN's supervisor at the time that BAHAN was performing work as a painter outside of the E-Room. (Agnew Dep. p. 27, line 14 to line 17)

17.     The company nurse shared the initial IWIRC assessment with Michelle Agnew. (Agnew Dep. p. 34, line 22 to line 25)

18.     Michelle Agnew saw the letter from BAHAN's physician, Dr. McVey, releasing BAHAN to work without restrictions. (Agnew Dep. p. 35, line 7 to line 25, p. 36, line 1 to line 2)

19.     BAHAN was allowed to resume work in the E-Room after CNH received Dr. McVey's letter. (Agnew Dep. p. 36, line 3 to line 6, Ex. 19 to BAHAN Dep., p.7)

20.     The company nurse handled the regular communications between CNH and IWIRC. (Agnew Dep. p. 36, line 19 to line 22)

21.     The decision to terminate BAHAN was an organizational decision made by Michelle Agnew, Darrell Ellis and the V. P. of HR, Brian French. (Agnew Dep. p. 39, line 3 to line 12)

22.     The decision to terminate BAHAN was "Based off the attendance policy". (Agnew Dep. p. 39, line 13 to line 15)

23.     The Attendance Policy attached to Agnew Dep. as Ex. "1" was the Attendance Policy in effect in the fall of 2016; and was the Attendance Policy reviewed with Darrell Ellis and Brian French at the time the decision was made to terminate BAHAN. (Agnew Dep. p. 39, line 16-25 and p. 40, line 1 to line 22, Exhibit "1" to Agnew Dep. and Exhibit "2" to BAHAN Dep.)

24.     The primary reason for BAHAN's termination was "number 7, Discipline, seventh occurrence –excessive absenteeism." (Agnew Dep. p. 41, line 20 to line 25 and p. 42, line 1 to line 3)

25.     Michelle Agnew received a letter from counsel for BAHAN on September 12, 2016 regarding BAHAN working in the E-Room. (Agnew Dep. p. 45, line 1 to line 25 and p. 46, line 1 to line 16)

25.     Michelle Agnew was aware after receipt of the letter of September 12, 2016 from counsel for BAHAN that counsel represented BAHAN "…with respect to his respiratory issues." (Agnew Dep. p. 47, line 23 to line 25 and p. 48, line 1 to line 2)

26.     Michelle Agnew was aware after receipt of the letter of September 12, 2016 from counsel for BAHAN that counsel for BAHAN was stating that "…he [BAHAN] was being asked to do things outside of his restrictions." (Agnew Dep. p. 48, line 22 to line 25 and p. 49, line 1 to line 4)

27.     Michelle Agnew was aware that BAHAN's job duties were modified to allow him to return to working outside of the E-Room after she received counsel's letter of September 12, 2016. (Agnew Dep. p. 49, line 5 to line 16)

28.     Michelle Agnew acknowledged receipt of BAHAN's Application for Adjustment of Claim filed with the Illinois Workers' Compensation Commission in July of 2016. (Agnew Dep. p. 46, line 21 to line 25 and p. 47, line 1 to line 22; and Ex. "2" to Agnew Dep., which is a copy of BAHAN's Application for Adjustment)

29.     The company nurse maintained a medical file on BAHAN. (Agnew Dep. p. 50, line 7 to line 10)

30.      Michelle Agnew would have had access to any information in BAHAN's medical file that the company nurse provided to her. (Agnew Dep. p. 50, line 23 to line 25 and p. 51, line 1)

31.     Michelle Agnew remembered discussions with BAHAN in her presence and in the presence of Darrell Ellis that "…IWIRC would need to agree with Dr. McVey's release without restrictions in order for CNH to allow Chris [BAHAN] to return to work with a respirator. (Agnew Dep. p. 52, line 4 to line 12)

32.     Michelle Agnew knew that Dan Hafey, the company nurse, was working with Dr. Hauter at IWIRC because Dr. Hauter's signature was on the documentation restricting BAHAN's use of a respirator. (Agnew Dep. p. 9, p. 53, line 9 to line 20)

33.     When Michelle Agnew received counsel for BAHAN's letter in September of 2016, Michelle Agnew directed counsel to Kathy Manthy, who was handling BAHAN's workers' compensation case for CNH's third-party administrator. (Agnew Dep. p. 54, line 8 to line 21)

34.     The peer group panel review process to review a termination determination was only available to employees who were terminated for reasons other than "misconduct". (Agnew Dep. p. 55, line 4 to line 22)

35.     If Bahan would have chosen to participate in the panel review process he would have had to disclose to co-employees the reason for his termination. (Agnew Dep. p. 56, line 5 to line 9)

36.     The panel review is not a mandatory participation requirement. (Agnew Dep. p. 58, line 1 to line 3)

37.     Bahan kept a journal of the events that occurred beginning in May of 2016 and up to and after his termination on September 23, 2016. (Bahan Dep. p. 135, line 1 to line 12, Ex. 19 to Bahan Dep.)  Bahan testified that his journal was written on a daily basis starting around July 11, 2016. (Bahan Dep. p. 136, line 16 to line 25 and p. 137, line 1-8 and Ex. 19 to Bahan Dep.) Bahan testified that he "…kept track of everything  pertaining to his illness and what was going on at work with it." (Bahan Dep. p. 135 line 10 to line 12)

38.     Bahan recorded in his journal that on September 6, 2016 "Gave my Dr.'s note to Darrell, (my Boss). I got no respons and continued to work in E-romm. In a later conversation I was accused of playing games bye (sic) my boss. 8 hours in E-room." (Ex. 19, Bahan Dep., page 7 of 10, a copy of which is attached hereto as Exhibit "2", Dep. of Bahan)

39.     Dr. Bryan McVay issued a letter directed To Whom It May Concern on September 2, 2016 advising "Christopher W. Bahan is under my care due to illness. Please take this into consideration when reviewing his time away." Additionally, Dr. McVay's letter of September 2, 2016 advised that "Mr. Bahan may return to work 09/06/2016. Due to chronic exposures and work environment, an alternate location or position would be preferred. (Ex. 9, Bahan Dep., a copy of which is attached to this Response)

40.     Exhibit "9", which is the copy of the letter of Dr. McVay, dated September 2, 2016 was produced by CNH in its initial disclosure and is bate-stamped CNH_000014 and was produced with the handwritten note "LET'S DISCUSS…DAN".  (Ex. 9, Dep. of Bahan)

41.     The Termination notice of CNH, dated 9/23/16 states: "Chris called in sick on 9/22/16." (Ex. 11, Dep. of Bahan, Doc. produced by CNH as CNH_000016)

42.     Michelle Agnew was aware that BAHAN had missed days of work due to Bahan's occupational injury other than those indicated in the attendance occurrences between the time of the company shutdown in June and July of 2016 and Bahan's termination. She just could not state each of the dates. (Agnew Dep. p. )

43.     Bahan worked for CNH beginning on March 16, 1989. (Bahan Dep. p. 34, line 25 and p. 35 line 1 to 4)

44.     Bahan submitted an "ADA Accommodation Employee Request" to CNH. On the "ADA Accommodation Employee Request", Bahan described his disability as a "pulmonary impairment"; and further noted that "my treating doctor has advised me to limit my exposure to certain material, including powder coating material particles. I am limited in my ability to be in the E-room; and I am limited in my use of a hood breathing apparatus." Bahan ultimately requested re-assignment to a position that did not require work in the "E-Room". (See Plaintiff's Exhibit C, attached to Plaintiff's Complaint filed on November 12, 2018)

## III.     ARGUMENT

## A. APPLICIABLE STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Matsushita Electric Industrial Co, Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only

if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  *Fed. R. Civ. P. 54(c)*; see also *Jay v. Intermet Wagner Inc*., 233 F.3d 1014, 1016 (7th Cir. 2000).  In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact. Rather, the court must allow the disputed issues of fact to be determined by the trier of fact.  *Anderson v. Liberty Lobby, Inc.*, 477 US 242, 106 S. Ct. 2505, 91 L. Ed. 2d. 202 (1986).  The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe.  *Waldridge v. American Hoeschst Corp*., 24 F.3d 918, 922 (7th Cir. 1994).  The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires trial. The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *McCann v. Iroquois Mem'l Hosp.*, 622 F. 3d 745, 752 (7th Cir. 2010)(citing *Anderson*, 477 U.S. at 255).

In reaching this determination, the court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, *Erdman v. City of Ft. Atkinson*, 84 F.3d 960, 961 (7th Cir. 1996).  At the summary judgment stage, the "court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts," such matters must be left for the jury.  *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007).  Accordingly, the summary judgment standard is applied "with special scrutiny to employment discrimination cases, which often turn on the issues of intent and credibility."  *Bellaver v. Quanex Corp*., 200 F.3d 485, 491 (7th Cir. 2000.

Bahan asserts that there are genuine issues of material fact that defeat CNH's Motion for Summary Judgment and CNH's Motion for Summary Judgment must be denied.

## B. BAHAN'S DISABILITY CLAIM UNDER THE ADA

The *Americans with Disabilities Act* "ADA" prohibits employers from discriminating against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The statute defines "qualified individual" as a person who, "with or without reasonable accommodation, can perform the essential functions" of the job. *Id*. at §12111(8). As noted by CNH, in order for Bahan to prove a disability discrimination claim under the ADA, Bahan must establish the following: (1) that he is disabled within the meaning of the ADA; (2) that he is otherwise qualified to perform the essential functions of his position with or without reasonable accommodation; and (3) that the adverse employment action was due to his disability. *Monroe v. Indiana Dep't of Transportation*, 871 F. 3d 495, 503 (7th Cir. 2017).

In the instant case, Bahan alleges that he sustained an occupational exposure to powder paint dust particles while working for CNH in June of 2016. (Complete Transcript of Deposition of Michelle Agnew, a copy of which is attached hereto and incorporated herein by reference as Exhibit "A" to Plaintiff's Response in Opposition to CNH's Motion for Summary Judgment ("Agnew Dep.") at p. 26, line 3 to line 14, and Ex. 2 from Agnew Dep., attached hereto, which is a copy of Bahan's Application for Adjustment of Claim filed with the Illinois Workers' Compensation Commission in July of 2016, a copy of which is attached hereto and incorporated herein by reference). Additionally, as a consequence of an occupational assessment ordered by CNH and performed by Dr. Hauter at IWIRC's on June 23, 2016, it was determined that Bahan did not have the requisite pulmonary function necessary to utilize a respirator. (Excerpts of Deposition of Bahan, a copy of which excerpts are attached hereto and incorporated herein by reference as Exhibit "B" to Plaintiff's Response in Opposition to CNH's Motion for Summary Judgment "Bahan Dep." at p. 81, line 16 to line 25, and Ex. 7 to Bahan Dep., and Agnew Dep. p.

14, line 11 to line 25 and p. 15, line 15 to line 19).Dr. Hauter then placed Bahan on restrictions on June 23, 2016, prohibiting Bahan from wearing a respirator. (Agnew Dep. p.15, line 9 to line 14 and p. 22, line 12 to line 15).

Michelle Agnew testified that the Company nurse for CNH, Dan Hafey, managed the communications between IWIRC and CNH with respect to Bahan's occupational condition. (Agnew Dep. p. 20, line 17 to line 25 and p. 21, line 1 to line 7) In light of IWIRC's restrictions imposed on Bahan, CNH reassigned Bahan to work outside of the E-Room as a Painter Operator 7. (Agnew Dep. p. 26, line 3 to line 14). The Company nurse was concerned that Bahan would not be able to perform his position without an accomodation; and Bahan, Darrell Ellis, the business área manager and Michelle Agnew all met and agreed that CNH would move Bahan to the Painter Operator 7 position to accomodate his respiratory issues. (Agnew Dep. p. 24, line 3 to line 23.

Thereafter, on July 18, 2016, Bahan's treating pulmonologist, Dr. McVay, cleared Bahan to return to work without restrictions. (Agnew Dep. p. 20, line 2 to line 16 and p. 35, line 1 to line 10, Ex. 8 to Bahan Dep.) Bahan was allowed to resume work in the E-Room. However, by September 2, 2016, Bahan was experiencing significant pulmonary symptoms and Dr. McVay placed Bahan back on restrictions to "limit exposure to aerosolized or particulate matter." (Ex. 9, to Bahan Dep.)

On September 6, 2016, Bahan provided his supervisor, Darrell Ellis, with the letter from Dr. McVay restricting Bahan from working in the E-Room. Bahan indicated that despite the fact that Bahan had provided Dr. McVay's work restrictions to Darrell Ellis, Bahan was required to remain working in the E-Room for an additional four work days. (Ex. 19 to Bahan Dep.) On September 12, 2016, Bahan recorded that he coughed up a large amount of blood; and eventually

that date he was moved out of the E-Room. (Ex. 19 to Bahan Dep.) Michelle Agnew testified

that she received a phone call and a letter from Bahan's counsel on September 12, 2016 advising

her that CNH was violating Bahan's restrictions; and that Bahan needed to be moved from the E-

Room due to his occupational illness. (Agnew Dep. p. 45, line 1 to line 25, p. 46, line 1 to line

16, p. 47, line 23 to line 25 and p. 48 line 1 and line 2). Following receipt of the letter and phone

call from counsel, Bahan was moved back to the position of Painter Operator 7, where he was

allowed to work outside of the E-Room.

On September 22, 2016, Bahan contacted CNH prior to the start of his shift and indicated

that he was throwing up, and was sick and would not be reporting for work. (Ex. 12, Bahan Dep.

and Ex. 11, Bahan Dep.) The following day, on September 23, 2016, Bahan was terminated.

Michelle Agnew indicated that the decisión to terminate Bahan's employment was an

"organizational decisión in consulation with myself [Agnew], the supervisor [Darrell Ellis] and

the VP of HR [Brian French]…. (Agnew Dep. p. 39, line 3 to line 12) Agnew testified that the

reason Bahan's employment was terminated was "Discipline, seventh occurrence—excessive

absenteeism." (Agnew Dep. p. 41, line 24 to line 25 and p. 42, line 1 to line 3) Michelle Agnew

also testified that the "seventh occurrence was the primary reason; not the half occurrence for the

failure to call in." (Agnew Dep. p. 42, line 4 to line 7)

Michelle Agnew testified that the Attendance Policy of CNH that was in effect in

September of 2016 was four pages in length; and she identified the Attendance Policy marked as

Ex. 2 to the Bahan Dep. and Ex. 1 to the Agnew Dep. as the Attendance Policy she relied on in

terminating Bahan. (Ex. 2 to Bahan Dep, Ex. 1 to Agnew Dep.) Michelle Agnew cited Bahan for

his "seventh occurrence" under the Attendance Policy despite the fact that the Attendance Policy

provided that absences for "Occupational Illness or Injury" were excluded. (Ex. 2 to Bahan Dep.,

26

at Section 8, paragraph 5, p. 3 of 4) Michelle Agnew stated that she was not aware that Bahan's illness on September 22, 2016 was due to his occupational illness; yet Michelle Agnew had been provided with a copy of the letter from Dr. McVay, dated September 2, 2016 requesting that CNH take into consideration Bahan's occupational illness "when reviewing his time away". (Ex. 9 of Bahan Dep.) Additionally, Michelle Agnew had been monitoring the occupational assessment and communications that the Company nurse had with Dr. Hauter and IWIRCs regarding Bahan's respiratory restrictions and pulmonary issues. Michelle Agnew and the folks making organizational decisión to terminate Bahan for his absence on September 22, 2016 did not even make any consideration of whether Bahan's illness on September 22, 2016 was due to the occupational illness he had been experiencing since June 23, 2016.

Furthermore, the Declaration of Michelle Agnew, filed in support of CNH's Motion for Summary Judgment makes it clear that there are genuine issues of material fact as to the number of attendance occurrences Bahan had received in advance of his termination due to his absence on September 22, 2016. According to the Exhibit "B" to the Declaration, Bahan received his Fifth Attendance Occurrence on May 17, 2016 not his Sixth. (Ex. "B" to the Declaration of Michelle Agnew) Additionally, there are genuine issues in controversy between the chart at paragraph 13 of Section II of CNH's Motion for Summary Judgment and the Declaration of Michelle Agnew, submitted for the first time as an Exhibit to CNH's Motion for Summary Judgment.

A careful reading of the Exhibit "B" to the Declaration reveals that Bahan's first attendance occurrence received on April 27, 2015 would have rolled off on April 27 2016, in advance of the point system counted for attendance occurrences for the 3-day suspensión issued on May 17, 2016. Actually, Bahan should only have received his Fifth Occurence on May 17,

2016; and the chart of attendance occurrences set forth in paragraph 13 of CNH's Motion for Summary Judgment incorrectly indicates that Bahan received an attendance occurrence on November 19, 2015. Actually, the written warning given on November 19 was for the attendance occurrence on November 18, 2015. (See Ex. "B" to Declaration of Agnew).

CNH argues that Bahan was not a person with a "qualified disability" under the ADA; yet, CNH clearly regarded Bahan as having an impairment of his pulmonary function when CNH received the results of the occupational assessment from Dr. Hauter at IWIRCs, advising that due to Bahan's pulmonary function he should be restricted from using a respirator. (Ex. #7 to Bahan Dep.) In addition, after receiving the letter of September 2, 2016 from Dr. McVay and the letter from counsel for Bahan advising that Bahan was limited in his ability to be around paint dust particles and other aerosoles; CNH regarded Bahan as having an impairment.

The ADA prohibits discrimination against a "qualified individual with a disability." 42 U.S.C. § 12112(a). An individual has a "disability" within the meaning of the ADA if he has "a physical or mental impairment that substantially limits one or more major life activities ...; a record of such an impairment; or [is] ... regarded as having such an impairment." 42 U.S.C. § 12102(2). Bahan has met his obligation to estabish that he was a "qualified individual with a disability" under the Act.

Bahan has also proffered sufficient evidence to meet his burden of estabishing that he could perform the essential job duties of the Painter Operator 7 with the accommodation that he be allowed to work outside of the E-Room. Following CNH's agreement to accommodate Dr. McVay's restrictions and place Bahan back into the position of Painter Operator 7, on September 12, 2016, Bahan was able to perform his position with accommodation. Although Bahan became sick on September 22, 2016 after utilizing aerosol paint spray in his position as Painter Operator

7;  the Attendance Policy of CNH allowed for Bahan to avoid receiving an attendance occurrence for his "Occupational Illness or Injury"; and with that accommodation provided by the terms of the CNH Attendance Policy, Bahan was able to perform the essential functions of his position with accommodation.

CNH argues that attendance was an essential function of every job at CNH; and in particular, CNH relies on the fact that the Attendance Policy specificially provides that "Reporting to work is an integral and essential function of every employee's job." (Ex. 2 to Bahan Dep.) However, CNH fails to recognize that its Attendance Policy also makes exceptions when employees are not able to attend work due to "Occupational Illness or Injury"; and the Attendance Policy further provides for Coordination with the ADA. In particular, paragraph 6 of Section 8 of the Attendance Policy provides that:

> 6.      Coordination with ADA—Reasonable Accommodatioins
> Reasonable accommodations will be made for employees with work restrictions as required by the Americans with Disabilities Act (ADA) or other pertinent laws. All requests for accommodation must be documented and handled by the medical department, when available, or by Human Resources, in such a manner as to protect confidentiality. (Ex. 2 to Bahan Dep.)

Here, Bahan had notified CNH and Human Resources and the medical department of his occupational illness and injury; and had notified CNH that his illness had caused him to miss some days from work.

The CNH Attendance Policy also sets out Responsibilities for Employees, Supervisors and Human Resource personnel and Medical personnel. (Ex. 2 to Bahan Dep, Section 8) The CNH Attendance Policy states that Employees are "…required to provide medical documentation in accordance with the Short Term Disablity Plan and the Family Medical Leave Act Policy." The Attendance Policy did not state that an employee was required to provide documentation that an absence was due to "occupational illness or injury". The plain language of the Attendance Policy

provided that absences due to "Occupational Illness or Injury" were exceptions; and yet Michelle Agnew and the organizational team who made the decisión to terminate Bahan never even inquired of Bahan whether his absence on September 22, 2016 was due to the Occupational Illness and Injury he had been enduring since June 23, 2016. This was true notwithstanding that CNH's Attendance Policy provided for specific responsiblities imposed on Supervisors, Human Resource personnel and Medical Personnel.

The final element that Bahan must prove in order to establish his prima facie case of disability discrimination is that Bahan would not have been terminated from his position with CNH but for his disability. As CNH has indicated, this determination must be made by using the "but-for" analysis; namely that but-for Bahan's disability he would not have been terminated by CNH. This determination requires consideration by the fact finder of the reason proffered by CNH for the termination. Courts in Illinois have recognized that in employment retaliation and discrimination situations, the determination of the motive of the employer is a fact question for consideration by the factfinder.

While an employer is certainly allowed to articulate a reason for an employee's termination; when there are discrepancies or inconsistencies in the reasons given; or the reasons given are not believable, then a trier of fact can draw reasonable inferences from those factual inconsistencies; and a finder of fact could conclude that such factual inconsistencies make it more likely that the reasons proffered by the employer for terminating the employee are "pretext" for unlawful discrimination or retaliation for an employee's exercise of their rights under the ADA.

In a similar fashion to the but-for test recognized as appliable to the determination of whether an employee's disability is the but-for cause of the employer's discrimination or retaliation under the ADA, in Illinois an employer who terminates an employee who has a

pending workers' compensation claim can be held liable for acts of discrimination and retaliation against the employee who has filed a claim for workers' compensation. As recognized by the Illinois Supreme Court in the case of *Clemons v. Mechanical Devices Co.*, the allocation of proof in a retaliatory discharge claim is reviewed using traditional tort analysis and the but-for test. *Clemons v. Mechanical Devices Co*., 184 Ill. 2d 328, 335-36, 704 N.E.2d 403, 406 (1998); and in addressing the causation element in a retaliatory discharge claim, it is for the fact finder to decide "the employer's motive in discharging the employee." *Netzel v. United Parcel Service, Inc*., 181 Ill. App. 3d 808, 812, 537 N.E.2d 1348, 1350 (1989).

Although CNH asserts that there is no genuine issue of fact to preclude the granting of summary judgment; CNH's proffering of a nondiscriminatory reason for Bahan's termination is sufficient to raise genuine issues of material fact concerning CNH's motive, thereby requiring consideration by the factfinder. In this case, there is significant evidence of retaliatory motive and animus against Bahan; and there is evidence that the proffered reason given by CNH of an attendance occurence for an absence that was due to an occupational illness is "pre-text"; and therefore subject to consideration by the jury. The evidence at this stage of the proceeding is sufficient to preclude the granting of summary judgment in favor of CNH. Bahan notified CNH of his physician's restrictions requiring him to refrain from working in the E-Room on September 6, 2016. CNH refused to accommodate Dr. McVay's restrictions until September 12, 2016; and then only after counsel for Bahan called and sent a letter to CNH demanding that CNH accommodate Bahan by allowing him to resume his work as a Painter Operator 7. Bahan testified to the various issues that arose with his supervisor, Darrell Ellis, following Bahan's reassignment to the Painter Operator 7 position on September 12, 2016. Ten days later, Bahan called in sick to CNH; and despite the fact that the Attendance Policy provides an exception for Occupational

31

Illnesses and Injury; the organizational team and the Company nurse never inquired of Bahan whether his illness on September 22, 2016 was due to his longstanding occupational illness for which Michelle Agnew, Darrell Ellis and the Company nurse were fully aware; and after almost thirty years of employment, Bahan is terminated.

On the basis of the foregoing, Bahan has raised genuine issues of material fact that preclude the granting of CNH's Motion for Summary Judgment.

## C. BAHAN'S ADA RETALIATION CLAIM

It is unlawful under the ADA for employers to retaliate against their employees for opposing any act or practice made unlawful by the ADA. 42 U.S.C. §12203(a). This is so regardless of whether the act opposed ultimately gives rise to a meritorious ADA discrimination claim. *Squibb v. Mem'l Med. Ctr.,* 497 F. 3d 775, 786 (7th Cir. 2007).

Normally, we first determine whether a plaintiff has established a *prima facie* case before putting the employer to the burden of demonstrating a non-discriminatory reason for a termination and engaging in the pretext analysis. *Hague v. Thompson Distribution Co.,* 436 F.3d 816, 823 (7th Cir.2006). In some cases, though, the issue of satisfactory performance and the question of pretext overlap.

When the employer asserts as the nondiscriminatory reason for termination that the employee was not meeting legitimate job expectations, the credibility of the employer's assertion is at issue for both the second element of the plaintiff's *prima facie* case and the pretext analysis. *Hague,* 436 F.3d at 823. *See also Bodenstab v. County of Cook,* 569 F.3d 651, 657 (7th Cir.2009) (although the question of pretext arises only after the plaintiff has established a *prima facie* case of discrimination and the employer has countered with a legitimate non-discriminatory reason for the adverse action, we may skip over the initial burden-shifting of the indirect method and focus

on the question of pretext); *Adelman–Reyes v. Saint Xavier Univ.,* 500 F.3d 662, 665 (7th Cir.2007) (the *prima facie* case and pretext inquiry often overlap; we may skip the analysis of the *prima facie* case and proceed directly to the evaluation of pretext if the defendant offers a non-discriminatory explanation for its employment decision). Under the direct proof methodology, a plaintiff may establish a *prima facie* case of retaliation by presenting direct evidence of statutorily protected activity, an adverse employment action, and a causal connection between the two. *Haywood v. Lucent Techs., Inc.,* 323 F.3d 524, 531 (7th Cir.2003)

In the instant case, Bahan asserts that the non-discriminatory reason proffered by CNH that Bahan was terminated because he received his "seventh occurrence" is "pre-text". To the extent that "pre-text" was argued in the preceding section, Bahan adopts those arguments as applicable to his action to recover against CNH for its retaliation under the ADA. To show pretext, a plaintiff must establish by a preponderance of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination or retaliation. "A pretext is a deliberate falsehood." *Forrester v. Rauland–Borg Corp.,* 453 F.3d 416, 419 (7th Cir.2006). To show pretext, an employee must show by a preponderence of the evidence that the legitimate reasons offered by the employer were not its true reasons, but were a pretext for unlawful discrimination or retaliation. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

To survive summary judgment on his retaliation claim, Bahan must present sufficient direct or circumstancial evidence for the trier of fact to infer that there was a causal link between the protected activity of requesting an accommodation under the ADA and the termination of his employment. *Antonetti v. Abbott Labs,* 563 F. 3d 587,592 (7th Cir. 2009). Additionally, where

33

there is temporal proximity to the employee's exercise of the employee's protected activity and the adverse employment action, that temporal proximity can be given consideration by the fact finder. *Haywood v. Lucent Techs., Inc.* 323 F. 3d 524, 531 (7th Cir. 2003) Here, Bahan has met his burden to establish that there is sufficient evidence, considered in the light most favorable to Bahan, that the actions of CNH in terminating his employment were in retaliation for Bahan's exercise of his rights to demand that CNH grant him accommodation for his disability.

## IV.    CONCLUSION

On the basis of the foregoing, BAHAN would respectfully request that the Motion for Summary Judgment filed by CNH be denied and would further pray for such other and further relief as this Court deems equitable and proper.

Respectfully Submitted,

CHRISTOPHER W. BAHAN, Plaintiff,

By Costigan & Wollrab, P.C.,

By:  **/s/ Dawn L. Wall**

Dawn L. Wall
ARDC Bar No.: 6196948
Attorney for the Plaintiff
Costigan & Wollrab, P.C.
308 E. Washington Street
Bloomington, Illinois 61701
Phone: (309) 828-4310
Fax: (309) 828-4325
dwall@cwlawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2020, I electronically filed Plaintiff's Response in Opposition to the Motion for Summary Judgment of Defendant along with Exhibits A and B to the Response; and

Exhibits 9, 11 and 19 of Bahan Dep.; and Ex. 2 of Agnew Dep, with the Clerk of the Court using the

CM/ECF system, which will send notification of such filing to the following Attorneys of Record:


**ATTORNEYS OF RECORDS**


Ms. Heather L. Wilson
FROST BROWN TODD LLC
201 North Illinois Street, Suite 1900
 P.O. Box 44961
Indianapolis, IN 46244-0961
hwilson@fbtlaw.com

Ms. Jennifer A. Rulon
FROST BROWN TODD LLC
9277 Center Pointe Drive, Suite 300
West Chester, OH 45069
jrulon@fbtlaw.com

Mr. David G. Lubben
Mr. Jay H. Scholl
DAVIS & CAMPBELL L.L.C.
401 Main Street, Suite 1600
Peoria, IL 61602
dglubben@dcamplaw.com

                                                  **/s/ Dawn L. Wall**_____
                                                  Dawn L. Wall, Bar No. 6196948
                                                  Attorney for the Plaintiff
                                                  Costigan & Wollrab, P.C.
                                                  308 E. Washington Street
                                                  Bloomington, Illinois 61701
                                                  Phone: (309) 828-4310
                                                  dwall@cwlawoffice.com