E-FILED
Tuesday, 29 December, 2020  11:34:12 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CHRISTOPHER W. BAHAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 18-cv-1414-JES-JEH |
| ) | |
| CNH INDUSTRIAL AMERICA, LLC, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant CNH Industrial America, LLC's Motion (Doc. 16)[1] for Summary Judgment. Plaintiff Christopher W. Bahan filed a Response (Doc. 21) in Opposition and Defendant filed a Reply (Doc. 23). For the reasons set forth below, Defendant's Motion (Doc. 16) is DENIED.

### BACKGROUND

Plaintiff Christopher W. Bahan ("Bahan") filed this action against Defendant CNH Industrial America, LLC ("CNH") on November 12, 2018. Doc. 1. This case stems from Bahan's termination as an employee of CNH. *Id.* at 6-7. In his two-count Complaint, Bahan alleges CNH violated the Americans with Disabilities Act Amendments Act ("ADAAA") 42 U.S.C. § 12101 *et seq. Id.* at 1. For Count 1, Bahan alleges CNH violated the ADAAA prohibition against discrimination by terminating him and refusing to provide him reasonable accommodations. For Count 2, Bahan alleges CNH violated the ADAAA act's prohibition against retaliation by

---

[1] Citations to the Docket in this case are abbreviated as "Doc. __." When referencing depositions, the Parties sometimes refer to the actual deposition page and line numbers in their citations, rather than the docket page and line. The Court cites to the docket rather than the Parties' differing citations.

terminating him and refusing to provide him reasonable accommodations. *Id.* 8-9. CNH has moved for summary judgment on all counts. Doc. 16. The following facts are undisputed.

**Events of Work Restriction and Termination**

Plaintiff Bahan worked as a painter in CNH's Goodfield Plant. *Id.* at 2. During the conduct relevant to this case, Darrell Ellis ("Ellis") was Bahan's supervisor, Michelle Agnew ("Agnew") was CNH's Human Resource Manager, and Dan Hafey ("Hafey") was a company nurse for CNH. *Id.* at 2, 4, 5. Agnew described Bahan as a tenured employee and Bahan testified he had started working for CNH in March 1989. Doc. 23, at 8. However, the events that gave rise to this case center on conduct over 2015[2] and 2016. During 2016, Bahan had been applying powder paint to equipment in the "E-room," which is an enclosed area designed to contain the powder paint. *Id.* While painting, Bahan was required to wear a respirator for protection when he applied paint or sprayed powder coating. *Id.* at 2.

After a routine occupational assessment conducted on June 23, 2016 by the Illinois Work Injury Resource Center ("IWIRC"), IWIRC restricted Bahan from using a respirator while painting. *Id.* at 5. Upon learning of this restriction, Hafey met with Agnew because he had concerns that Bahan would not be able to perform the duties of a painter without the respirator. *Id.* Agnew, Ellis, and another manager then met with Bahan regarding the restriction. *Id.* Bahan expressed that he was very concerned, but Agnew assured him that they were "prepared to work together to find an alternative option that would work so that he [Bahan] could perform his job." *Id.* CNH then accommodated Bahan and moved him outside of the E-room to work in a different position within the painting department, the Painter Operator 7 position. *Id.* In this role, Bahan worked loading and unloading equipment and performing various other tasks. *Id.* He kept his

---

[2] The events in 2015 are detailed in the discussion section of this Opinion because the relevant conduct in 2015 solely relates to Bahan's work absences which involve various issues of disputed facts.

prior rate of pay even though the new position normally paid less. *Id.* at 5-6. Once there, Bahan's

hours of work remained the same. *Id.* at 6. CNH was shut down from June 29, 2016 to July 17,

2016, so Bahan did not paint during that time. *Id.* On July 18, 2016, Bahan's physician, Dr.

Bryan McVay, cleared him to return to work without restrictions so Bahan returned to his

original painting position. *Id.*

> On September 2, 2016,[3] Bahan's doctor sent a letter to CNH stating the following:
>
> . . . Bahan is under my care due to illness. Please take this into consideration when
> reviewing his time away. Mr. Bahan may return to work 09/06/2016. Due to chronic
> exposures and work environment, an alternate location or position would be
> preferred. Restrictions: may return with the following restrictions: limit exposure
> to aerosolized or particulate matter. If you need additional information, please feel
> free to contact our office.

Doc. 21-3, at 2. CNH produced a copy of this note with a handwritten note on it stating, "LET'S

DISCUSS . . . DAN." Doc. 21, at 6. CNH accommodated this restriction by moving Bahan again

to his position outside of the E-room, which avoided exposure to aerosolized product and powder

dust. Doc. 16, at 6-7. Bahan retained his rate of pay. *Id.* Bahan also testified that he kept a journal

regarding work events and his illness starting from May 2016 through his termination, and

thereafter. Doc. 23, at 14.[4] In the journal, Bahan wrote that he gave his boss, Ellis, his doctor's

note on September 6 and later that day Ellis accused him of "playing games." *See* Doc. 21-5.

Agnew received a letter from Bahan's counsel on September 12, 2016 regarding his work

in the E-room and Bahan "being asked to do things outside of his restrictions." Doc. 23, at 11-

---

[3] The Parties refer both a September 2 accommodation request and a September 6 request, both which stem from Dr.
McVay's letter dated September 2, 2016. Although it is not entirely clear, the Court interprets this to mean CNH
received the letter from Bahan's doctor on September 2 and Bahan submitted the same letter to his boss on
September 6. Bahan's Response suggests this is the correct interpretation. Doc. 21, at 9. For the sake of clarity, the
Court will refer to this letter as the "September 2 request" as the Parties agree it was an accommodation request.
[4] CNH does not dispute the journal but argues it is not material because CNH accommodated Bahan by moving him
out of the E-room. *Id.*

12.[5] On or after September 12, 2016, Bahan was moved back to the Paint Operator 7 position

outside of the E-room. Doc. 21, at 20 (citing Doc. 21-1, at 51:5-51:16). Bahan and Ellis got into

a verbal altercation at work on September 15, 2016, after which, Bahan received a documented

verbal reprimand. *Id.* at 11-12; Doc. 21-1, at 31:6-32:5. On September 22, 2016, at 6:13 a.m.,

Bahan sent a text message to his work stating he would not be in that day because he was

"throwing up violently." Doc. 16-2, at 52. This message was sent less than 30 minutes before his

scheduled start at 6:30 a.m. Doc. 16, at 8. After his absence, CNH immediately terminated Bahan

on September 23, 2016. *Id.* Agnew, Ellis, and the VP of HR were involved in the termination

decision. Doc. 21, at 19.

**CNH Attendance Policy**

The following contents of CNH's Attendance Policy are undisputed. *See id.* at 3. The

policy states, "Reporting to work is an integral and essential function of every employee's job.

To achieve ongoing operating requirements, a consistent number of employees must be available

to work each scheduled work day." Doc. 16, at 3. CNH states,

> Under the Attendance Policy, employees receive progressive
> discipline as occurrences accumulate within a rolling 12-month time
> frame:
>
> > 4th occurrence: Documented verbal counseling
> > 5th occurrence: Documented written warning
> > 6th occurrence: Documented written warning with a 3-day
> >              suspension
> > 7th occurrence: Discharge for excessive absenteeism

*Id.* The attendance policy gives exceptions for excused time off, approved personal leave,

or *occupational illness or injury* as well as a clause specifically providing reasonable

---

[5] Bahan has not submitted a copy of the letter to the Court. CNH does not dispute Agnew's testimony regarding the letter she received from Bahan's counsel. However, it argues the Court cannot consider the letter's contents because Bahan did not submit it to the Court. Doc. 23, at 11-12.

accommodations for disabilities. *Id.* (emphasis added). Under these exceptions an employee will not accrue attendance occurrences. The policy further states:

> Reasonable accommodations will be made for employees with work restrictions as required by the Americans with Disabilities Act (ADA) or other pertinent laws. All requests for accommodations must be documented and handled by the medical department, when available, or by Human Resources, in such a manner as to protect confidentiality.

*Id.* at 3-4.

### LEGAL STANDARD

Summary judgment is appropriate where the movant shows, through "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations … admissions, interrogatory answers, or other materials" that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. In resolving a summary judgment motion, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

To withstand a motion for summary judgment, the nonmovant must "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When presented with a motion for summary judgment, the Court must construe the record "in the light most favorable to the nonmovant and avoid[] the temptation to decide which party's version of the facts is more likely true." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). If the evidence, however, is "merely colorable, or is not significantly probative or merely raises 'some metaphysical doubt as the material facts,' summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50. Thus, in order to overcome the undisputed facts set forth in a defendant's motion for summary judgment, a plaintiff cannot rest on the allegations in his complaint but must point to affidavits, depositions or other evidence of an admissible sort

that a genuine dispute of material fact exists between parties. Fed. R. Civ. P. 56(e)(2); *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996).

### DISCUSSION

The Americans with Disabilities Act "ADA" prohibits employers from discriminating against any "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). The statute defines a "qualified individual" as a person who, "with or without reasonable accommodation, can perform the essential functions" of the job. *Id*. at § 12111(8). Disability is defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) a record of such an impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Failure to accommodate a known disability can constitute discrimination under the ADA. 42 U.S.C. § 12112(a), (b)(5)(A). It is also unlawful for employers to retaliate against their employees who have engaged in activities protected by the ADA, such as requesting a reasonable accommodation. 42 U.S.C. § 12203(a). Here, Bahan alleges CNH discriminated against him because of his disability, failed to accommodate his disability, and retaliated against him when he requested an accommodation.

CNH argues it is entitled to summary judgment on Bahan's discrimination and retaliation claims because the undisputed material facts show it fired him based on CNH's attendance policy rather than a discriminatory reason. Doc. 16, at 1-2. CNH also argues it is entitled to summary judgment on Bahan's accommodation claim because CNH reasonably accommodated him up until his termination. *Id*. Bahan opposes CNH's Motion on grounds that various genuine disputes of material fact exist. Doc. 21, at 1-3. Many of the contested issues overlap throughout Bahan's claims of discrimination, retaliation, and a failure to accommodate.

In establishing a retaliation or discrimination claim, a plaintiff may apply either a direct or indirect approach. *Williams v. Bd. of Educ. of City of Chicago*, No. 19-3152, 2020 WL 7218499, at *5 (7th Cir. Dec. 8, 2020) (citing *Madlock v. WEC Energy Grp., Inc.*, 885 F.3d 465, 472 (7th Cir. 2018)). *But see Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765-66 (7th Cir. 2016) (overruling "convincing mosaic" as a legal standard and criticizing district courts' applications of direct and indirect frameworks).[6] "Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence." *Ortiz*, 834 F.3d at 765. The holding in *Ortiz* applies to employment discrimination claims as well as retaliation claims. *Lewis v. Wilkie*, 909 F.3d 858, 867 n.2 (7th Cir. 2018). Thus, the Court considers the evidence under the holistic approach articulated in *Ortiz*: "whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's [disability] caused the discharge or other adverse employment action." *Id. See also Rowlands v. United Parcel Serv. - Fort Wayne*, 901 F.3d 792 (7th Cir. 2018) (reaffirming *Ortiz*).

---

[6] Specifically, the Seventh Circuit stated,

> From now on, any decision of a district court that treats [convincing mosaic] as a legal requirement in an employment-discrimination case is subject to summary reversal, so that the district court can evaluate the evidence under the correct standard. That legal standard, to repeat what we wrote in *Achor* and many later cases, is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action . . . Accordingly, we hold that district courts must stop separating "direct" from "indirect" evidence and proceeding as if they were subject to different legal standards. Once again, this court must accept its share of the responsibility—because even as some panels were disparaging the "direct" and "indirect" approaches, other panels were articulating them as governing legal standards. We need to bring harmony to circuit law, and the way to do that is to overrule *Andrews*, 743 F.3d 230; *Silverman*, 637 F.3d 729; *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487 (7th Cir. 2007); *Rhodes*, 359 F.3d at 498; *Haywood v. Lucent Technologies, Inc.*, 323 F.3d 524 (7th Cir. 2003); *Oest v. Illinois Department of Corrections*, 240 F.3d 605 (7th Cir. 2001); *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612 (7th Cir. 2000); *Chiaramonte v. Fashion Bed Group, Inc.*, 129 F.3d 391 (7th Cir. 1997); *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir. 1988); and *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405 (7th Cir. 1984), to the extent that these opinions insist on the use of the direct- and indirect framework.

*Id.*

## A. Disability Discrimination

To defeat a motion for summary judgment on an ADA claim, the plaintiff must identify a genuine issue of material fact as to whether: (1) the plaintiff is disabled within the meaning of the ADA; (2) he is able to perform the essential functions of the job either with or without reasonable accommodation; and (3) he suffered an adverse employment action because of his disability. *Gogos v. AMS Mechanical Systems, Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013); *Kampier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007); *Rooney v. Koch Air, LLC*, 410 F.3d 376, 380-81 (7th Cir. 2005); *Majors v. General Electric Company*, 714 F.3d 527, 533 (7th Cir. 2013). The Parties and the Seventh Circuit agree that "but-for" is currently the applicable causation standard in ADA discrimination cases. *See McCann v. Badger Mining Corp.*, 965 F.3d 578, 589 n.46 (7th Cir. 2020) (noting it technically remains an open question in this circuit whether language alterations in the ADAAA changed the substantive causation standard). Here, Bahan concedes he must prove "but-for [his] disability he would not have been terminated by CNH." Doc. 21, at 30. Bahan argues CNH discriminated against him when it fired him because of his disability.

For the purposes of summary judgment, Bahan has made a *prima facie* showing of disability discrimination and presented sufficient evidence to rebut Defendant's non-discriminatory reason for terminating Bahan.[7] The Court focuses its analysis on the second and

---

[7] While *Ortiz* did not alter the *McDonnell Douglas* burden-shifting framework, "it is not the only way to assess circumstantial evidence of discrimination." *David v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 846 F.3d 216, 224 (7th Cir. 2017). Although it is not entirely clear, the Court understands that Bahan has not invoked the *McDonnell Douglas* burden-shifting method to refute CNH's motion. In his brief, he did not cite or articulate this framework, nor does he argue the fourth prong of the framework that similarly situated non-disabled employees were treated more favorably than him. Therefore, the Court does not address his case in these terms. Even if Bahan did, *Ortiz* cautioned against stringently assigning evidence to indirect versus direct categories. Accordingly, contrary to CNH's position, Bahan's claim does not fail simply because he has also testified that he was not aware of anyone else who had incurred seven attendance occurrences who was still employed with CNH. Doc. 16, at 15-16.

third prong of the discrimination claim as CNH did not contest whether Bahan is disabled within the meaning of the ADA.

### 1.   Disability within the meaning of the ADA

First, Bahan has presented facts that could lead a reasonable factfinder to conclude that he is disabled under the ADA. Bahan contends he has respiratory issues and pulmonary impairment. These issues caused him to cough up blood and limited his ability to use his breathing apparatus at CNH. Doc. 21, at 22, 25. Bahan submitted the letter from his pulmonary specialist, Dr. McVay, which stated Bahan was under his care due to illness and he needed to limit exposure to aerosolized or particulate matter. Doc. 21-3, at 2. It is undisputed that CNH received this same letter and Bahan was placed on restrictions from using a respirator at times. Notably, in its Motion, CNH did not argue that Bahan was not disabled within the meaning of the ADA. Based on Agnew's deposition, CNH was generally aware of Bahan's situation regarding medical issues as he was on and off restriction, which arose after the IWIRC restricted him. It also regarded Bahan as having a health condition that it was accommodating. Doc. 16, at 9.

### 2.   Essential Function of the Job

Second, Bahan has presented facts that he is able to perform the essential functions of the job with a reasonable accommodation. Prior to his termination, Bahan worked in the Paint Operator 7 position as a form of an accommodation due to his medical restrictions. CNH commented on Bahan's work performance when he was briefly in this role, however, it did not fire Bahan for poor performance. It cited "absenteeism" in Bahan's termination notice. Other than attendance, CNH did not argue Bahan failed to meet the expectations of the Paint Operator 7 role. Rather, in its brief, CNH argues attendance was an essential function of his job and he could not "perform" it. Doc. 16, at 14. Therefore, he is not a qualified individual. Doc. 23 at 17.

CNH cites to *Stelter v. Wisconsin Physicians Serv. Ins. Corp.*, 950 F.3d 488, 491 (7th Cir. 2020) for the proposition that absenteeism takes a person outside the protections of the ADA. Doc. 16, at 14. There are two important considerations in applying *Stelter*. First, the manager in *Stetler* that recommended the employee for termination had expressed concerns about the employee's performance for four years and cited performance reasons in the recommendation as well as a pattern of absences. 950 F.3d at 490-91. Here, CNH only cited attendance occurrences as the reason for termination. Second, the Court does not interpret *Stelter* to mean absences automatically remove an employee from ADA protection. This interpretation is supported by another case CNH cited, *Waggoner v. Olin Corp.*, 169 F.3d 481, 483 (7th Cir. 1999).

> [I]t is not the absence itself but rather the excessive frequency of an employee's absences in relation to that employee's job responsibilities that may lead to a finding that an employee is unable to perform the duties of his job. Consideration of the degree of excessiveness is a factual issue well suited to a jury determination.

*Id.* (quoting *Haschmann v. Time Warner Entertainment Co.*, 151 F.3d 591, 602 (7th Cir. 1998)).

As in *Haschmann*, the degree of excessiveness often arises in cases where an employee requires medical leave but has "erratic, unexplained absences" and a court considers "when is enough, enough?" *See Waggoner*, 169 F.3d at 484. While no particular number equates to "excessive," the employee in *Waggoner* missed work or was late for work 40 times over a 14-month period and spent about 6 months on medical leave. 169 F.3d at 482. Based on the evidence in the record, a reasonable factfinder could conclude Bahan's absenteeism did not rise to the level such that he was not "qualified" within the meaning of the ADA. Even if Bahan's attendance issues qualify as an inability to perform the essential function of the job, as discussed below, a question of fact exists as to whether Bahan had accrued seven attendance occurrences.

### 3.  Adverse Employment Action

Finally, Bahan has presented sufficient evidence to allow a reasonable jury to find he suffered an adverse employment action because of his disability. To show disability discrimination was the "but for" reason for the termination, a plaintiff can use either direct evidence or circumstantial evidence. *Rowlands*, 901 F.3d at 801-02 (citing *Monroe v. Indiana Dep't of Transportation*, 871 F.3d 495, 504 (7th Cir. 2017)). Circumstantial evidence may include suspicious timing or evidence that the employer offered a pretextual reason for an adverse employment action. *Id.* Bahan relies on these two categories of circumstantial evidence. While a reasonable factfinder could conclude Bahan's attendance fell directly within the confines of CNH's attendance policy and CNH fired him because of absenteeism, Bahan also presented evidence by which a factfinder could determine he was terminated because of his disability.

Bahan argues there are genuine issues of fact surrounding CNH's reason for terminating him and whether its proffered non-discriminatory reasoning is pretext. Doc. 21, at 31-32. Pretext can be shown by evidence suggesting that the proffered reason was factually baseless, was not the actual motivation, or was insufficient to motivate the employer's action. *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 730 (7th Cir. 2001). For Bahan to meet his burden of showing CNH's non-discriminatory reason was pretext, he "must 'identify such weaknesses, implausibilities, inconsistencies, or contradictions' in [CNH's] asserted reason 'that a reasonable person could find it unworthy of credence.'" *Coleman v. Donahoe*, 667 F.3d 835, 852–53 (7th Cir. 2012) (quoting *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 792 (7th Cir. 2007)). But courts "cannot second-guess employment decisions to the extent that they were innocently unwise or unfair." *Rowlands*, 901 F.3d at 802 (quoting *Miller v. Illinois Dep't of Transp.*, 643 F.3d 190, 200 (7th Cir. 2011) (internal quotation marks omitted)). The question is whether Bahan "presented sufficient evidence from which a finder of fact could genuinely call into question

11

[CNH's] honesty." *Id*. In his Response, Bahan focuses on attendance disputes, interactions with Agnew and Ellis, and temporal proximity, which the Court further discusses under Bahan's retaliation claim.

### a. Attendance

The Court finds there are material issues of fact surrounding Bahan's attendance occurrences starting with the number he had accrued. The Parties agree Bahan's attendance constitutes material fact. Doc. 16, at 3; Doc. 21 at 5. CNH claims Bahan had a total of seven attendance occurrences, which justified termination according to the Attendance Policy. In contrast, Bahan asserts he had only accrued six occurrences at the time he was terminated and disputes whether the sixth occurrence should have counted as an occurrence. The following chart reflects the Parties' differing stances on Bahan's attendance occurrences.

|  | CNH's Motion | Bahan's Response | CNH's Reply |
|---|---|---|---|
| 1st Occurrence | October 8, 2015 | October 8, 2015 | April 27, 2015 |
| 2nd Occurrence | October 13, 2015 | October 13, 2015 | October 8, 2015 |
| 3rd Occurrence | November 18, 2015 | November 18, 2015 | October 13, 2015 |
| 4th Occurrence | November 19, 2015 | December 17, 2015 | November 18, 2015 |
| 5th Occurrence | December 17, 2015 | May 17, 2016 | December 15, 2015 |
| 6th Occurrence | May 17, 2016 | *September 22, 2016*[8] | May 16, 2016 |
| 7th Occurrence | September 22, 2016 |  | September 22, 2016 |

---

[8] Bahan disputes whether this should count towards his attendance occurrences because he claims it is was due to an occupational illness or injury. Therefore, it falls within the exception to CNH's attendance policy.

In his Response, Bahan disputes his number of attendance occurrences prior to September 22, 2016. Bahan claims the Declaration of Michelle Agnew indicates Bahan had only accrued his fifth occurrence on May 17, 2016. Doc. 21, at 7; *see* Doc. 16-1, at 11. Thus, Bahan would have only accrued his 6th occurrence on September 22, 2016, which would not warrant termination. *Cf.* Doc. 16, at 4 *and* Doc. 21, at 5-6. After Bahan pointed out CNH's error in stating Bahan was absent on November 19, 2015, CNH changed its calculation of Bahan's absences in its Reply. Now, CNH argues Bahan's dispute over attendance arises from a clerical error on whether Bahan was absent November 19. Doc. 23, at 15-16. CNH claims that their counsel mistakenly marked an occurrence on November 19, 2015, when in fact CNH agrees that Bahan did not receive an occurrence on that day. *Id.* CNH exchanges Bahan's November 19, 2015 absence for an April 27, 2015 absence to reach the seven occurrences limitation. CNH further asserts the Attendance Policy still outlines grounds for termination based on Bahan's absences. *Id*. Therefore, CNH argues there is no genuine dispute as to whether Bahan had accrued seven attendance occurrences.

CNH's shifting explanation of the absences is curious. An employer's shifting or inconsistent explanations for the same employment decision can raise an inference of unlawful intent. *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 933 (7th Cir. 2020). In isolation, CNH's shift may not raise concern; however, as previously noted, the Court takes a holistic approach to the evidence in this case. The issue is not whether CNH's miscalculated Bahan's absences but whether the reasoning CNH's gave for termination was pretextual. When viewing evidence of the shifting explanation for the seven absences in context of other evidence in this case, it does raise a genuine issue of material fact.

Bahan also disputes whether the September 22 absence should be categorized as an "absence" due to his medical issue being an "occupational illness." In the same vein, there is a question of fact as to whether CNH previously approved this type of absence for Bahan as "occupational" then changed its stance around early to mid-September. According to Bahan, CNH's policy did not require documentation for absences resulting from "occupational illness or injury." Doc. 21, at 29. When questioned whether Agnew was aware of other absences between June and September 22 where Bahan indicated he was unable to work due to his respiratory issues, Agnew's responded "I don't recall the specifics." Doc. 23, at 9 (citing Doc. 21-1, at 51:17-52:6). The Court does not agree with Bahan's characterization that Agnew's testimony conclusively proves he had missed work other days, which did not count as attendance occurrences. Doc. 21, at 22. Agnew's statement may be relevant to whether Bahan's absence on September 22 fell within the exception to CNH's attendance policy. More importantly, this issue of fact goes to the surrounding circumstances of timing and motive.

### b. Interactions with CNH – Agnew and Ellis

Both Agnew and Ellis were involved in the decision to terminate Bahan's employment. Doc. 21, at 19. Bahan's termination occurred shortly after Agnew communicated with Bahan's counsel and after Bahan had a dispute with Ellis. Bahan's interactions with both of them are material to this case. First, there are questions of fact surrounding Agnew's interaction with Bahan's counsel and his medical issues as well as CNH's response to Bahan's September 2 request for an accommodation. *See id.* at 26. There was an exchange between Agnew and Bahan's counsel on September 12. *Id.* at 19. In her deposition, Agnew remembered some aspects of the interaction while other aspects she did not remember. Agnew recalled that Bahan's counsel called her and sent her a letter and fax. Doc. 21-1, at 46:21-47:16. She recalled the letter

mentioning counsel representing Bahan "with respect to his respiratory issues" and counsel complained Bahan "was being asked to do things outside of his restrictions." *Id.* at 49:23-50:2, 50:22-51:4. Bahan also pointed to testimony where counsel questions Agnew regarding a text message wherein Agnew supposedly confirmed receipt of counsel's letter and directed counsel to speak with Kathy Manthy ("Manthy"). *Id.* at 47:1-48:16, 56:8-56:21. Agnew did not recall sending the message but stated she did not have reason to believe she did not send it. *Id.* It is undisputed that Manthy "worked for CNH's workers' compensation third party administrator and handled workers' compensation cases" but CNH contests that Agnew directed Bahan's counsel to speak with Manthy. Doc. 23, at 22. At this time, CNH had been managing the back and forth of Bahan being able to work with and without restriction, and now Bahan was supposedly working on a worker's compensation claim[9] based on the letter from his counsel to Agnew. He was fired soon after returning to work with restrictions.

CNH argues the Court cannot consider the letter from Bahan's counsel to Agnew because Bahan did not submit it. However, at the summary judgment stage, the Court can consider Agnew's testimony regarding the letter. Moreover, Agnew is a representative from CNH who was employed by CNH at the time of her deposition. CNH's argument seems to question the credibility of Agnew's statements. Credibility is a question for the jury. For the purposes of this Motion, the Court will accept Agnew's statement as true as CNH has not rebutted them. Where a proposed statement of fact is supported by the record and not adequately rebutted, a court will accept that statement as true for purposes of summary judgment; an adequate rebuttal requires a citation to specific support in the record. *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878,

---

[9] For clarification, the Court notes there is no evidence that Bahan's had a filed a worker's compensation claim prior to his termination and in the instant case he did not allege a retaliatory discharge claim predicated on the filing of a worker's compensation claim.

887 (7th Cir. 1998). CNH is free to argue the credibility of its own witness at trial. Further, the fact that Agnew knew about this letter or the information contained within it may be more important than the actual letter itself.

The record indicates there was tension between Bahan and his supervisor, Ellis, in the weeks leading up to Bahan's termination. A reasonable fact finder could conclude that some of Ellis's statements constituted animus towards Bahan's illness, thus supporting motive to discriminate based on Bahan's disability. For instance, on September 6 Ellis accused Bahan of "playing games" after he gave him the doctor's note that same day asking to return to restrictions outside the E-room. Doc. 23, at 14. If Plaintiff chooses to properly introduce his journal at trial, then a jury can determine the weight and credibility of the evidence. Thereafter, Bahan and Ellis had a verbal altercation on September 15. Doc. 21, at 11. At some point some friction arose between Bahan and Ellis after he was moved outside of the E-room and Agnew from HR became aware of it. *See* Doc. 16-3, at 19:24-20:4. Ellis had made statements he was unhappy with Bahan's speed as a paint operator and Bahan became frustrated with his new position, which he attributed to a lack of training. *Id.* at 20:5-21:9. It is unclear which event presupposed the other or whether they developed contemporaneously. The Parties mention the exchanges between Bahan and Ellis but do not focus on them in their briefs.

This case is also unique in that Bahan is not alleging a negligence claim or otherwise, yet he repeatedly alleges his injury was caused by workplace exposures. Bahan claims "CNH was aware that Bahan had sustained an occupational illness due to his exposure to powder paint dust; and Bahan's treating pulmonologist had advised CNH in writing on September 2, 2016 that as an accommodation, Bahan should be allowed to work outside of the paint box E-Room[.]" Doc. 21, at 2. At first blush, it may seem the origin of Bahan's injury or alleged disability is irrelevant as

CNH claims. However, taking the evidence as a whole, it begs the question of whether CNH's knowledge of Bahan's allegation attributed to a pretextual reason for his termination. In one section of her deposition, Agnew stated she became aware Bahan was asserting an occupational injury in summer 2016. Doc. 21-1, at 16:16-16:25. Yet, in her later testimony,[10] she claims she did not know until Bahan provided the second doctor's note, which the Court infers to be the September 2 note. *Id.* at 21:12-22:16.[11] The Court does not make a finding as to whether Bahan's injury was occupational but considers his assertion to the extent that it attributes to the inference of pretext.

Finally, at this stage in the proceedings, it is immaterial whether CNH engaged in an "interactive process" after it fired Bahan. CNH's October 2016 engagement in the process occurred after the damage had been done – Bahan was already terminated. Rather, a reasonable juror could perceive the interactive process after termination and subsequent communication from CNH to Bahan as evidence of pretext.

---

[10] Bahan did not cite this portion of the Agnew's testimony in his statement of facts for the same proposition but Defendant did not dispute Agnew's testimony in its Response. Doc. 21, at 16-17.

[11]
    23 Q. When did you learn that Chris was
    24 asserting that his respiration issues were related
    25 to his exposure to paint dust?
    1 A. Several months later.
    2 Q. And how did you learn of that?
    3 A. When -- we had a shutdown timeframe over
    4 that summer. And during that timeframe, he had
    5 been working a different position with the company
    6 that we had accommodated him for. And over the
    7 shutdown, he had seen his doctor, who had released
    8 him fully to work.
    9 When we came back from the shutdown, he
    10 was put back in his normal position based off of
    11 his doctor's release.
    12 After several weeks after that, he then
    13 came back with another doctor's note stating that
    14 he had restrictions based off of exposure in the
    15 workplace. And that was the first time that I was
    16 aware that there was any concern there.

In viewing the facts in a light most favorable to Bahan, a rational jury could find CNH's termination reason was pretextual. Unlike the Court at the summary judgment stage, the jury's determination will also be aided by hearing live testimony and observing the demeanor of witnesses. As such, a genuine dispute of material fact exists as to whether Bahan suffered an adverse employment action because of his disability. "In the end a jury might not credit [Bahan's] evidence and could accept [CNH's] explanations. But given the conflict on material issues, a trial is necessary." *Rowlands*, 901 F.3d at 803 (quoting *Ortiz*, 834 F.3d at 766 (internal quotation marks omitted)).

## B. Retaliation

Bahan also claims CNH terminated him in retaliation for his request to receive a reasonable accommodation under the ADA. Doc. 21, at 34. Bahan states he "must present sufficient direct or circumstantial evidence for the trier of fact to infer that there was a causal link between the protected activity of requesting an accommodation under the ADA and the termination of his employment." *Id.* at 33 (citing *Antonetti v. Abbott Labs*, 563 F. 3d 587, 592 (7th Cir. 2009)). Bahan's statement of his burden coincides with an *Ortiz* approach. "For a reasonable factfinder to find in [Bahan]'s favor, the evidence would have to establish either a causal connection between [Bahan]'s protected activity and the adverse action he suffered or else support an inference of retaliatory motive." *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 371 (7th Cir. 2019) (internal quotation marks and citation omitted)).

In their briefs, the Parties focus on the causal connection between Bahan's request for accommodation and his termination. Bahan asserts he has established a *prima facie* case of retaliation under the direct proof methodology and established pretext by a preponderance of the evidence. Doc. 21, at 33. In its Motion, CNH argues it terminated Bahan due to his "excessive absenteeism." *See* Doc. 16, at 18. Bahan responds that evidence shows the reasoning was

18

pretextual as CNH's had a retaliatory motive and animus against Bahan's disability. Doc. 21, at 30-31. Bahan cites to Agnew's deposition for support that CNH delayed accommodating the September 2 restriction his physician requested until September 12 only after Bahan's counsel called and sent a letter to CNH demanding the accommodation. *Id.* at 26. Bahan also emphasizes his own testimony regarding various issues that arose with his supervisor after Bahan moved back to the Painter Operator 7 position on September 12. *Id.* at 30-31. Finally, he cites to the undisputed attendance policy and Agnew's deposition for support that his September 22 absence should have fallen under the "occupational illness" exception. *Id.* at 29. He claims Agnew was aware of his medical issues and she was involved in the termination decision. *Id.* at 26.

Both Parties mention the timing between Bahan's request for accommodation and his termination and dispute its significance. For example, Bahan contends the proximity between Bahan's September request and follow-up request for accommodation and his termination date raises a reasonable inference of pretext. The Seventh Circuit has repeatedly held close temporal proximity alone is rarely sufficient to show causation in a retaliation claim. *Coleman v. Donahoe*, 667 F.3d 835, 860–61 (7th Cir. 2012); *see also McCann*, 965 F.3d at 592 (rejecting plaintiff's argument that suspicious timing alone was enough to survive summary judgment). But proximity alongside other corroborating evidence may support an inference of retaliatory motive and permit a plaintiff to survive summary judgment. *Coleman*, 667 F.3d at 860–61. "Deciding when the inference is appropriate cannot be resolved by a legal rule; the answer depends on context, just as an evaluation of context is essential to determine whether an employer's explanation is fishy enough to support an inference that the real reason must be discriminatory." *Loudermilk v. Best Pallet Co., LLC*, 636 F.3d 312, 315 (7th Cir. 2011). Where an inference of causation would be reasonable in a particular case, "[a] jury, not a judge, should decide whether the inference is

19

appropriate." *Id*. However, a submission to the jury on this issue depends on the unique facts of the case – it is not automatic. *McCann*, 965 F.3d at 593 n.72.

There is no bright-line rule for assessing the interval between the protected activity and the adverse employment action. *See Coleman*, 667 F.3d at 860–61 (citing *Magyar v. St. Joseph Regional Medical Center*, 544 F.3d 766, 772 (7th Cir. 2008) ("This court has found a month short enough to reinforce an inference of retaliation.")). In construing the facts in a light most favorable to Bahan, early September would be the starting point in time when his doctor sent the September 2 letter to CNH or when Bahan gave the letter to his supervisor. Time could also be measured by the September 12 date when Bahan's counsel complained to Agnew that CNH was violating Bahan's medical restrictions. Yet, there are still factual questions surrounding that interaction and exchanged words. In any case, these events occurred over a few weeks. When viewing evidence as a whole, Bahan presented sufficient evidence to submit the issue to a jury.

Much of the Court's analysis under Bahan's disability discrimination claim applies to his retaliation claim, especially the circumstances surrounding his termination and timing, which question whether CNH's reason for terminating him was pretextual. Bahan provided more than timing in support of his contention that CNH had a retaliatory motive. Here, Bahan was fired 10 days after he moved to restricted work. Agnew's interactions with Bahan's counsel and CNH's delayed response to the September 2 accommodation request are also relevant to this inquiry. On the retaliation claim, it may not matter whether Bahan's injury qualified as an "occupational injury," rather, a reasonable juror may find CNH's knowledge that Bahan asserted his illness was caused by work further shows CNH's retaliatory motive. Among other reasons, considering the timing of Bahan's request, Agnew's knowledge of him asserting an "occupational" injury, and the question of whether Bahan in fact had seven attributable attendance occurrences, a

reasonable factfinder could conclude CNH retaliated against Bahan for requesting another

accommodation. Therefore, the Court denies summary judgment on his retaliation claim.

## C. Accommodation

Within his discrimination and retaliation claims, Bahan also asserts CNH failed to

provide reasonable accommodations. The ADA provides that an employer discriminates by "not

making reasonable accommodations to the known physical or mental limitations of an otherwise

qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). To prevail on a failure to

accommodate claim, a plaintiff must prove that "(1) he was a qualified individual with a

disability, (2) the employer was aware of his disability, and (3) the employer failed to reasonably

accommodate his disability. Relevant to—and sometimes determinative of—the third element is

the employer and employee's respective cooperation in an interactive process to determine a

reasonable accommodation." *Williams*, 2020 WL 7218499, at *5 (quoting *Sansone v. Brennan*,

917 F.3d 975, 979 (7th Cir. 2019) (internal quotation marks omitted)). An employer is not

required to provide the specific accommodation that an employee with a disability requests;

nonetheless it must at least provide a reasonable one. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d

789, 802 (7th Cir. 2005).

In its Motion, CNH focuses on the third element of an accommodation claim, by insisting

"CNH provided him with the reasonable accommodation he requested." Doc. 16, at 17. In its

Reply, CNH contends Bahan waived all arguments for his failure to accommodate claim because

he did not raise them in his Response, therefore the Court should grant summary judgment in

CNH's favor on this claim. Doc. 23, at 19. While Bahan did not provide particularly strong

evidence or argument for this claim, he did point to some evidence in his brief and his claims are

interlinked to the extent that it is inappropriate to dismiss the accommodation claim at this time.

As previously discussed, Bahan provided sufficient evidence for a reasonable factfinder to conclude he is disabled within the meaning of the ADA. Turning to the second requirement of awareness, an employee has an initial duty to inform the employee of the disability. *Sears, Roebuck & Co.*, 417 F.3d at 803. Subject to some exceptions, the employee must also request an accommodation before ADA liability attaches. *Id*. Plaintiff argues CNH should have been aware that Bahan's absence was due to his occupational illness because it received the September 2 letter from Dr. McVay and Agnew had been monitoring Bahan's issues alongside Nurse Hafey. Doc. 21, at 27. Moreover, CNH did not contest that Bahan had a disability under the ADA or that CNH was unaware of it. *See* Doc. 16, at 17-18.

Focusing on the third element, Bahan admitted in his deposition that he believed CNH provided a reasonable accommodation by moving him to the Paint Operator 7 position. Doc. 16, at 6-7. Bahan now disputes that he never requested time off as an accommodation. Doc. 21, at 9. For support, Bahan states his treating physician requested an accommodation for Bahan regarding occasional time away from work due to his condition. *Id*. He focuses on his doctor's phrasing to take Bahan's illness into "consideration when reviewing his time away." *Id*. CNH describes Bahan as claiming his "September 2, 2016 doctor's note[] provides support for an accommodation of unpaid leave," which is "a request for erratic and indefinite time off," which the ADA does not protect. Doc. 23, at 17. The evidence does not show CNH engaged in any interactive process after receiving the September 2 note but before it fired Bahan. However, an employer does not violate the ADA simply for a failure to engage in the process. *Williams*, 2020 WL 7218499, at *5.

The evidence shows Bahan did not specifically request an accommodation for a particular amount of time off and in other instances he stated that he did not need a leave of absence.

However, CNH did have an exception to its policy for an "occupational illness." While an accommodation for "indefinite time off" may be unreasonable, there is a question as to whether Dr. McVay's letter was a request for an accommodation in connection with CNH's exception to attendance for occupational illnesses and its reasonableness. CNH argues Bahan has not offered any evidence that he had an "occupational illness." However, a reasonable fact finder could conclude Dr. McVay's letter supports this assertion. Moreover, this was a doctor's note; not a letter necessarily meant to prove Bahan's injury was occupational. Doctors' notes are often brief, and doctors are not expected to comply with the legal language to fully support an ADA claim in issuing a letter to an employer. This issue can be further explored at trial. The letter, as well as Agnew and Bahan's depositions, are sufficient to survive a motion for summary judgment.

Bahan also argues CNH delayed in accommodating him by not granting his September 2 accommodation request until September 12. Doc. 21, at 31. Surrounding this delay, Bahan's journal referenced in his brief and deposition states "Gave my Dr.'s note to Darrell, (my Boss). I got no respons [sic] and continued to work in E-romm. In a later conversation I was accused of playing games bye [sic] my boss. 8 hours in E-room." Doc. 21-5, at 8. As previously discussed, it is unclear whether CNH granted Bahan time-off due to his illness then stopped allowing it, which gave rise to the September 22 occurrence. Even if it did, a cessation in accommodation does not necessarily equate to an ADA violation. It is also uncertain how CNH would manage Bahan's requests for time-off if he could simply state it was always due to illness, which could negate the reasonableness of his accommodation request. At the same time, according to Bahan, CNH's policy did not require documentation for absences arising from an "occupational illness or injury." Doc. 21, at 29. A plain reading of the submitted attendance policy does not contradict that assertion. The Parties do not dispute that CNH's policy requires documentation for ADA

accommodation requests and the doctor's note was a written document. Doc. 16, at 3-4. CNH did not argue that immediately moving Bahan back to the Operator 7 position would have caused undue hardship. Nor does it give any explanation at all for the delay.

Even a short duration in an adverse employment action "does not diminish its importance during the time it lasted," but naturally, a short duration can impact the degree of damages. *Harroun v. S. Wine & Spirits of Illinois, Inc.*, No. 09 C 2522, 2010 WL 3420062, at *8 (N.D. Ill. Aug. 23, 2010) (quoting *Molnar v. Booth*, 229 F.3d 593, 600–01 (7th Cir. 2000) (internal quotation marks omitted)). In an accommodation claim, whether an unreasonable delay amounts to an ADA violation depends on the totality of the circumstances such as the employer's good faith attempt to accommodate or provide an alternative accommodation, the length of delay, and reasoning for the delay. *McCray v. Wilkie*, 966 F.3d 616, 621 (7th Cir. 2020). Regardless, an "unreasonable delay in providing an accommodation can provide evidence of discrimination," which further shows the interconnectedness of Bahan's claims. *See Jay v. Intermet Wagner Inc.*, 233 F.3d 1014, 1017 (7th Cir. 2000). Accordingly, the Court denies summary judgment on Bahan's failure-to-accommodate claim.

## CONCLUSION

For the reasons set forth above, Defendant's Motion (Doc. 16) for Summary Judgment is DENIED.

Signed on this 29th day of December, 2020.

s/James E. Shadid
James E. Shadid
United States District Judge

24